**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Joshua George, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant authorizing the collection of a Deoxyribonucleic Acid (DNA) sample for Jason RINCONES (RINCONES), fully described in Attachments A and B, by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) for DNA testing. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41.

2.     I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) since July of 2023. I am currently assigned to the Detroit, Michigan Field Division, Grand Rapids Field Office, where I am tasked with investigating violations of firearms and narcotics laws. Before working for the ATF, I was a certified Police Officer in the State of Tennessee for six years. In my career in law enforcement, I have been involved in numerous investigations related to violations of federal criminal statutes, including those involving violations related to narcotics and firearms.

3.     The collection of the DNA samples will be accomplished in a manner that is minimally intrusive and poses no risk of harm. Specifically, I, or another law

enforcement official, will obtain RINCONES' DNA by inserting a buccal (oral) swab(s) into his mouth and running each swab along the inside of his cheeks and the inside of his lips.

4.     The statements in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.     Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that RINCONES committed a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, on March 2, 2024. Additionally, there is probable cause to believe the requested DNA samples will yield evidence that RINCONES engaged in the aforementioned federal crime.

## **PROBABLE CAUSE**

6.     On March 2, 2024, Grand Rapids Police were dispatched to 1105 Burton St. SE Grand Rapids, MI, 49507 to an assault reported by two female victims. They also provided police RINCONES' description. When police arrived at 1105 Burton St. SE, they encountered RINCONES outside of the residence and detained him. Police then spoke with victim Gloria Perez. She reported that she was previously in a relationship with RINCONES but currently was not.

7.     Ms. Perez told police that she saw RINCONES outside her residence and that she kept asking him to leave. She further reported that she went back in the

residence and saw a laser pointed at her when she came out the residence again. She stated that RINCONES was crouched down near the bushes across the street, and the laser was coming from the direction of where RINCONES was located. Ms. Perez was with her female friend Rosibel Velasquez, who also witnessed the laser. The women retreated into the house because they believed RINCONES was pointing a firearm at them.

8. Police did not find a firearm on RINCONES' person when they arrested him. They deployed a K-9 in the area to locate the firearm. They found a Ruger EC9S pistol with a laser attachment and an obliterated serial number in a bush between 1101 and 1105 Burton St. SE. The crime scene technician conducted a DNA swab on the pistol. The pistol was later sent to the Grand Rapids Michigan State Police (MSP) Lab and the lab was able to recover a serial number from the pistol. That serial number is 491-29476.

9. At the scene, police spoke to the next-door neighbors living at 1101 Burton St. SE. The neighbors stated that RINCONES had been arguing with Ms. Perez on the porch originally. The neighbors explained that they later noticed RINCONES walking on the side of the house in between 1101 and 1105 Burton St. SE, which is where police located the Ruger pistol.

10. Police asked RINCONES whether he had a gun with a laser on it. He said he was on parole and was not allowed to have a gun. RINCONES alleged that Ms. Perez has a gun with a laser on it and that it was currently at a salon owned by

Ms. Perez . Ms. Perez was asked if she had a firearm at her salon with a laser on it. She said she did not.

11.     A computerized criminal history check of RINCONES revealed that he was on parole and has the following five prior felony convictions:

    a.   Motor Vehicle-Driving Away;

    b.   Manufacturing/Delivering Controlled Substance;

    c.   Financial Transaction Device-Stealing/Retaining Without Consent;

    d.   Armed Robbery; and

    e.   Weapons Felony Firearm.

12.     RINCONES is currently detained at the Kent County Jail, which is within the Western District of Michigan.

13.     Based on the facts above, there is probable cause to believe that evidence of RINCONES' DNA will be found on the Ruger EC9S pistol, further proving that he unlawfully possessed the firearm.

## DNA TESTING AND THE COLLECTION OF DNA SAMPLES

14.     Based on my training and experience, including discussions with other law enforcement officers, I know that there are two sources of DNA used in forensic analyses. Nuclear DNA (nDNA) is typically analyzed in evidence containing blood, saliva, body tissue, and hairs that have tissue at their ends. Mitochondrial DNA (mDNA) is typically analyzed in evidence containing naturally shed hairs and hair fragments. When DNA evidence is transferred by direct or secondary (indirect) means, it remains on surfaces by absorption or adherence. In general, liquid biological

evidence is absorbed into surfaces and solid biological evidence adheres to an object. Current DNA tests are so sensitive that they can type the DNA found in samples containing only a few cells. Merely touching an object may leave enough DNA material that a forensic analysis will be able to match the object to the person who touched it.

15.     Buccal swabs provide the least invasive way to conduct DNA testing. A buccal swab is a cotton-tipped applicator that will be used to collect cheek cells from inside a person's mouth. The lab will then extract a person's DNA profile from the buccal swab, which will then be used for comparison purposes to the profile(s), if any, ultimately extracted from swabs collected from other evidence.

16.     I propose to take the DNA samples sought herein in an entirely non-intrusive manner. Specifically, I seek to take "buccal," or cheek swabs from the inside of RINCONES' mouth by using cotton-tipped applicators (it is like a Q-tip) to rub the inside of RINCONES' cheeks. The buccal swabs take moments, involves no risk to health, "no risk, trauma, or pain," and may be conducted at the Kent County Jail or in any other secure location.

17.     I have been informed by the United States Attorney's Office that it is well settled that the fifth amendment privilege against self-incrimination does not preclude the use of one's body as evidence. *Schmerber v. California*, 384 U.S. 757, 765 (1985); *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir. 2008); *Mcveigh v. Smith*, 872 F.2d 725, 727-28 (6th Cir. 1989). I have also been informed that procedures such as these do not implicate the Sixth Amendment. *See, e.g., McVeigh*, 872 F.2d at 727.

18.     Your affiant seeks to compare the DNA of RINCONES obtained under the authority of this search warrant to any DNA obtained collected from the Ruger EC9S pistol recovered from the scene on March 2, 2024.

## <u>CONCLUSION</u>

19.     I submit that there is probable cause to issue the requested warrant. Based on these facts, I have probable cause to believe that RINCONES violated 18 U.S.C. § 922(g)(1), felon in possession of a firearm, and a DNA sample from RINCONES will yield evidence of his involvement of that offense.